Good morning, Matt Larson of the Federal Defender's Office for Mr. Needham. Your Honors, there are two reasons Detective Franco did not execute this warrant in objective good faith. First, this was a general warrant, a blanket order to seize a suspect's property and sift through it for incriminating evidence. Any well-trained officer knows that general warrants are invalid. So what do we do with Dougherty? I'm sorry? What do we do with Dougherty? Dougherty, Your Honor, Dougherty did not involve a general warrant, or at least the court did not address whether the warrant there was a general warrant. I thought it was, it did address what was in the warrant, and it did say that it was a completely inadequate warrant, and it seemed to be, in probable cause determination, it seemed to be pretty similar to this one. You can tell me how it's different in a moment. And then it said, you know, maybe somewhat surprisingly, but it was good faith for qualified immunity purposes. So I guess there are two questions. A, is there any difference between the Leon standard and the qualified immunity standard after Messersmith? And secondly, is there some distinction as to the warrant that makes one in good faith and the other one not? Answering the first question as to the warrant, I understand Dougherty to involve a warrant to seize computer equipment. Here, the warrant was that and much more. The order was to seize all of Mr. Needham's records, whether written or electronic, all of his communications of any kind, all of his emails, all of his telephones, all of his recording devices, all of his CDs, all of his DVDs, et cetera, et cetera, et cetera. You call that a general warrant? Indeed, Your Honor. It's essentially all the papers of a person. That's where we get the prohibition against general warrants. But did anything matter other than the computer? Excuse me? Did anything other than the computer matter? Well, actually, it wasn't even a computer. Here, the evidence was found on an iPod. And there certainly were no facts indicating that the iPod would contain evidence of the alleged touching in the mall restroom. General warrants, Your Honor, to answer your question, back in the day, in the 18th century in Britain, there was, you know, the Entik case. He was a publisher. He published something that the Crown said was libelous. Here we have evidence of libel. Let's go into his house, take all of his papers out, look through them for incriminating evidence. That was rejected. And in fact, the Entik decision is why we have the Fourth Amendment. Is it your position that if they're searching for child pornography, they can't look in papers as well as electronic media? If there are facts, Your Honor, justifying a specific search of property for child pornography, then, of course, the police may. But that doesn't convert it into a general warrant. No, Your Honor. In other words, if the warrant is permissive in terms of the contraband to be searched and seized, then the agents can look at any place where such contraband could be hidden, correct? Indeed, Your Honor. If there are facts supporting the search of a particular item for particular evidence, then it's not a general warrant. And your position is that a trained sex crime juvenile detective who says, I've investigated many of these cases involving active molestation, and I have found that these types of people also tend to collect child pornography, is not enough for an agent to think that she has probable cause? Your Honor, that's exactly the kind of claim that this Court rejected in Weber over 20 years ago. Is it true anyway that that isn't what the warrant said? I'm sorry, Judge? That isn't what the warrant said. It's what the warrant entirely said, maybe. But this warrant didn't say that she had any experience, actually. It said, I learned it. Thank you for pointing that out. I would also like to point out, yes, she provided no experiential data. She did not say, I've investigated so-and-so cases of alleged touching and found that in so-and-so percentage of them, the suspect also happens to have. She didn't. I mean, in fact, it appears that she was not a sex crime police officer and that she didn't have any particular experience. That's also reflected in the affidavit. I believe she was posted to this unit some eight months before the search. She had been an officer for nine years before then, but I don't believe the affidavit indicates her expertise was in child touching offenses. Let's assume for a moment that you are correct. Dowry, of course, was not in existence at the time that this case was heard. So the real issue, and Weber, of course, was. But Detective Franco, if she acted in good faith when you executed the warrant, you're out of luck, right? Objective good faith. No one's questioning her subjective. Okay. So I guess the question would be, here she has a warrant signed by the magistrate judge. She moves forward and acts on it. Why is that not an objective good faith? What did she know? What should she have known that would say the magistrate was just flat out wrong? What she should have known, and what any well-trained officer should have known and does know in light of Weber and cases before it, is that simply making an allegation about these people does not authorize someone to go into a person's home and look for evidence. Now, Detective Franco did a good job initially in this case. She heard about the alleged touching. She went to the mall. She got the videotape. She talked to the mother. She put in a photo lineup. This is all good police work, and we're not challenging this. She had cause to look for the first two items, the clothing and the credit card, which would presumably identify Mr. Needham as the person in the bathroom. But then the third item, Your Honors, was some four or five pages essentially listing everything that Needham has, whether in writing or electronic form or computers or recordings. I didn't understand your brief to be couched in this direction. In other words, I didn't understand your complaint to be the breadth of what was to be searched exactly rather than the lack of probable cause to think you were going to find child pornography anywhere. This seems to be a switch of the focus of the case. Is that a fair opinion? Respectfully, I disagree, Your Honor. The opening brief talks about general warrants and how this was a general warrant and how it was overbroad because there was no specificity as to why any of the items seized under item three was likely to contain contraband or evidence of a crime. But I won't dispute Your Honor's reading of the brief. We have, you know, a second and discrete reason as to why the officer did not act in objective good faith in this case, even apart from the general warrant argument. And that's simply that, you know, the assertion she made. But if they had probable cause to think there was child pornography, and he had child pornography, wouldn't they have probable cause at least to search the iPod? If they had probable cause to think he had child pornography. I understand that. So that's why you keep switching gears here. In other words, is the problem that there wasn't probable cause to think he had child pornography or is the problem that the places to be searched were too broad? Both. And I'm sorry for being unclear. All right. But if so, then I asked you a hypothetical. If there was probable cause to think that there was child pornography, that he did possess child pornography, then why was it overbroad? Oh, then it wouldn't be. If there were probable cause, Your Honor, then it wouldn't have been. So the general, the breadth of where they were searching has nothing to do with it. It's whether there was probable cause to believe he had child pornography. I won't dispute that, Your Honor. All right. Well, let's focus the argument there. All right. And I believe Your Honor asked me to address Doherty, right? So Doherty I'm trying to distinguish Doherty on the basis of the breadth of how many places that we're searching. And I don't think that works very well. Let's talk about Doherty then. It is kind of odd that Doherty talks about Weber in the first half of the opinion when it's discussing probable cause and then makes no mention of Weber at all when it's discussing qualified immunity. It is odd. It is odd. But I guess what I'm asking you is, do we have to go on bank about the part of Doherty for you to win? No, Your Honor. Because Weber is the controlling case here. Weber was a good faith case. And Weber involved the same kind of assertion about these kind of people, which is here. The same kind of assertion that is not supported by experiential data or particular facts. Let's go back to that, Mr. Larson. Maybe I'm misreading something. I'm looking at paragraphs 2 and 3, excerpt of record 3 of the investigating detective statement of probable cause. And she recounts the fact that she is assigned to the Youth Services Bureau specializing in the investigation of crimes against children, that she has been involved in numerous investigations, including but not limited to child molestation, child annoyance, child abuse, sexual assault, rape, domestic violence, domestic assault. She's also been a school resources officer before. Why is that not sufficient for a nine-year veteran of law enforcement to be able to rely upon information that she has obtained through that experience in investigating child molest? It's not sufficient, Your Honor, for the same reason this court in Weber said it wasn't sufficient. There in Weber on page 1341 of the opinion, it says that the detective there set forth in his affidavit a general description of the proclivities of pedophiles. And that description was based on his experience and his training in child pornography investigation and his discussions with other law enforcement agents. Here, Detective Franco made exactly the same claim that was rejected over 20 years earlier in Weber. She did not say, here's an expert. Was it rejected on good faith? It was, Your Honor, on both probable cause and good faith grounds. Is there a conflict between Weber and Dougherty on this issue? That's where the oddity of Dougherty not acknowledging Weber comes in. Now, I don't know what the panel thought in Dougherty. Maybe they thought that because it was a qualified immunity case, a civil case, it was a different kind of case and they weren't going to apply the good faith logic that was in Weber. But Weber clearly predates Dougherty by some two decades and has been the law in this circuit ever since. But what do we do with the language in the Supreme Court cases that say we must rely on the experience of trained law enforcement agents even though we as judges may not have that same kind of experience? Your Honor, I don't dispute that the experience of an officer may be relevant in a case. But in Weber, as here, that simple experience without supporting facts, without supporting experience, empirical studies, or expert opinion was found inadequate. And also, doesn't Dougherty essentially resolve the probable cause question here? Indeed. I know you don't like Dougherty on the other issue. But with regard to Judge Chalmers' question as to probable cause, Dougherty, if anything, was more specific as to the experience and the basis and so on. Indeed. How do we treat Dougherty, though, for purposes of the good faith issue? Because Dougherty was decided in 2011, which was subsequent to the events and trial here. So that doesn't really play into what the officer objectively should have known, right? What she should have objectively known is the case law of this court dating back to it goes without saying that one cannot search a man's home for evidence to prove he's a child pornography collector merely by alleging that he is one. And that's essentially the allegation here. She said, well, these people do this. And these people include me. Help me with this. Police officers have a difficult job. Many of them are not lawyers. And a magistrate judge said this was OK. That's the case in every situation where we argue. I'm just saying, yes, isn't it in that place? The officers that are kind of a catch 22, they bring something. The magistrate judge, the magistrate judge reads it. The magistrate judge presumably has learned it in the law. This case said this is fine. What's striking about this case is the very good work that the officer did do with respect to the alleged touching laid out. She goes to the mall. She talks to suspects. She has already mentioned that strikingly absent from her affidavit is any kind of such work with regard to claim three, which is I want to go and take all of this. And also the Supreme Court had an opportunity to limit Leon or to overturn it just recently. And it didn't do it. So it can't be that the fact that a magistrate judge that issued the warrant is dispositive because it was dispositive there wouldn't be any Leon. I agree. And I mean, doesn't Messerschmidt apply here where the officer relied on the fact that the assistant district attorney had reviewed the affidavit and the magistrate had signed it before she executed it? That's true. For example, in the Stanford case, Stanford, there were two DAs who signed off on the warrant. The Supreme Court unanimously said it was defective. Yeah, but we got reversed in Messerschmidt because we didn't accord qualified immunity to the officer, to the detective who relied on the issuance of the warrant. Your Honor, in Messerschmidt, a witness came forward and said, the defendant just fired a gun at me. He's a gang member. He just tried to kill me. So they went to his house looking for guns and gang membership, indicia of gang membership. Here, no witness came forward and said, Mr. Needham has child pornography in his house. That would be a Can I mention one other thing? You're over your time. You also mentioned in your brief that the affidavit never says that there's probable cause to think that Needham has child pornography. It says these people have child pornography. But it doesn't say that there's probable cause. It says there's probable cause to search the residence. But it doesn't say for what. It doesn't say for child pornography. Right. Now, is there any case law about that? Well, that goes back to the general warrant argument, which is they're taking all of his papers out, you know, defined large. And they said, you know, on page eight of the excerpt, it says, we're going to search all of this, quote, for evidence, period. And as Your Honor just said, evidence of what, you know, it's this sort of dragnet, let's take everything and look through it to see if there's something that we can use to nail this guy. Because we think these people are dangerous. But this kind of thinking, Your Honors, is what the Fourth Amendment precludes. It is not gut reactions about these people that authorizes the search of someone's home. It's facts. Now, here the officer could have said, I've talked to an expert about this with respect to Mr. Needham's case, or a witness has come forward and said he's had child pornography in the past, you know, and has it in his house now. Or I went online and talked to him in an undercover, you know, undercover context, and he admitted that he has child porn. Like, all these kinds of facts show up in other cases where there is probable cause to look for child pornography because the person has indicated it. Here, there were no such facts. Merely an assertion about these people under the Fourth Amendment, that's not enough. All right. Thank you very much. We're over your time. We'll probably give you a minute or so. Thank you, Your Honors. May it please the Court, Doug McCormick for the government. The Court should affirm defendant's conviction. First, the officers performing the search acted in good faith reliance on the warrant. Two years ago in United States v. Doherty, this Court concluded on a similar warrant that was, if anything, weaker than the warrant here, that the officers were entitled to qualified immunity. And the Supreme Court has made clear that qualified immunity and the good faith exception to the exclusionary rule are, in fact, two sides of the same coin. And what do you rely upon for that point? Footnote one in the case of Messerschmitt v. Melender, which I cited to the Court in a 28-J letter submitted last week, says basically just that. I didn't understand your reference to Doherty. Doherty is our case. That's right, Your Honor. Oh, you said the Supreme Court. I said, I'm sorry, I meant to say this Court. If I stuck a Supreme in there, that was just a mistake. Accordingly, the Court's conclusion in Doherty where they made a finding of qualified immunity or found qualified immunity should dictate a finding of good faith here. And on that basis alone, the conviction should be affirmed. Let me address briefly counsel's arguments about Weber. Well, let me ask you something. Even though the substantive standard is the same in the two cases, it seems to me the immunity when you're dealing with Leon. Isn't the burden of proof in a different place? Well, the burden in the sense that in the qualified immunity case, the plaintiff's burden to prove that there is not immunity. Is that right or not right? Whereas in this instance, you're talking about an exception to, and it seems to me that it's the government's burden to prove the good faith. Is that right or not right? Well, I think that in each circumstance, the test is whether the officer is. I understand the test is. I'm wondering whether the presumptions are in the opposite direction. It strikes me, though, that going back a couple of years to the Supreme Court's decision in Davis, which makes clear that really the good faith exception to the exclusionary rule is basically designed to ensure that the exclusionary rule operates only where necessary to deter officer misconduct. But it's an exception. And ordinarily, the burden on exceptions is on the part of claiming the exception. I would agree with that. And am I right that in the other instance, it's all on the plaintiff? Well, the plaintiff has to prove. I'm not sure about that. I'm not sure about it either, Your Honor. The plaintiff has to prove that the officers aren't entitled to qualified immunity. I would agree with that as well. So they could come out differently on the same facts in the two instances? I don't agree with that. I don't think that's what the Supreme Court says in Messerschmidt. And essentially, what I think the footnote says in Messerschmidt is. I didn't have that problem exactly. They weren't dealing with it. They were simply saying the standard is basically the same, which it basically is. But that still doesn't mean the cases couldn't come out differently. I think it would be hard to reconcile how a case could come out. And that would explain why Dougherty could come out differently than Weber, too. It's possible. I understand that. What I think is interesting about Dougherty is, obviously, you have all three judges there who are aware of Weber.  All right. So let me just ask you one thing. Are you agreeing that there was not probable cause here? Oh, no, Your Honor. Well, how can you not agree to that after Dougherty? I think this case is different than Dougherty. In what way? Yes, in the opposite direction, as far as I can tell. I think it may be a hard argument. But no, I think the Dougherty case is very different. The Dougherty case, I don't think it's clear from the opinion what the officers are investigating at Dougherty. I think they're investigating a child pornography case. Here, they're investigating a child molestation case. They're looking for evidence of child molestation. That's clear from the warrant. Well, what difference does that make? Well, it makes a difference because... It makes no difference. Because they still have to have probable cause to think there's child pornography. True. And I think the probable cause is contained in Detective Franco's affidavit, in which she says... That means there's no difference from Dougherty. It's true that once they got the evidence, maybe they could use it for that purpose. I don't know if they could or couldn't, but it's irrelevant. That whole warrant argument is totally irrelevant. I think the difference in Dougherty is this. And let me find my notes on Dougherty, and it'll help me out a little bit. Like I said, I don't think there's any indication in Dougherty that the officers are, in fact, investigating the inappropriate touching allegations. I think they're looking for child pornography. So what difference does that make? Here, because the officers are looking for child molestation, I think, under the cases like Warden v. Hayden and Messerschmitt. That tells you whether you could use the evidence to trial, but what does that have to do with... Don't you still need probable cause if there's child pornography? Correct. I agree with that. So what difference does it make? Because I think in that case, I think there was a bigger, experiential leap between the allegations there, which I think were not as serious as the allegations here, and the additional evidence of the defendant's background, which also we did not have in Dougherty. So in Dougherty, you had some allegations of inappropriate touching in a sixth grade classroom, and then the officer basically going from that evidence and taking the jump to people like this have an interest in child pornography, and we expect to find child pornography. So the cases really turn on evidence of nexus. Is that what we're getting hung up on? In other words, can a trained and experienced sex crimes detective investigating an active child molester reasonably suspect that an active child molester is likely to also be a collector of child pornography? I think that's right, Your Honor. Did Dougherty say flat no? I think the two judges in Dougherty do reject that premise. And that's binding on us. I believe that's correct. As a matter of law, no experienced law enforcement officer who does these kinds of investigations could reasonably make that conclusion, that there's a fair probability that evidence of child pornography may be found in Mr. Clymer's house if he's an active, or Mr. Needham's house, if he's an active child molester. You know, I think I would like to make that argument. I think it is a difficult argument in light of how sweeping the language in Dougherty is. But on the other hand, Dougherty is very favorable to you on the issue of good faith. That's correct, Your Honor. It is an interesting argument. It doesn't really boil down to good faith. I mean, Dougherty is very clear. Even Weber probably covers it. It seems to me that it really gets down to the meaning of footnote one and Messerschmitt that you talked about before. You've got at least the Third, Fourth, Sixth, Second, and Eighth Circuit join Dougherty in their view about the kind of evidence put forward to get the warrant in this case. So it really gets down to whether the officer can rely on good faith. And it seems like footnote one is you're saying that eligibility for qualified immunity and good faith are, in effect, synonymous. Is that correct? I agree, Your Honor. And I would just take exception with one thing you said. I think at the time of this warrant was executed, in fact, the most recent opinion from a circuit court was the Colbert decision in the Eighth Circuit, which actually accepted the premise that Judge Tolman just put forward, which is that an experienced detective could rely on a... So there's a split of authority in the circuits, but ours happens to be one that's not favorable to you, at least to the warrant. Correct. But as to the issue of good faith, which seems to me that's the prong you've got to rely upon, what's your best argument that they can rely upon good faith? The other one's a weak read. What do we do to provide good faith here? Where does it exist? It exists, quite simply, Your Honor, in the calendar, which is that this search took place 13 months before this court's decision in Dougherty. What about Weber? I would argue, Your Honor, that Weber is easily distinguishable on the facts, and I agree with the three judges in Dougherty. Tell me why. Well, in Weber, the court faulted the affidavit because they said there was not a wit of evidence, I'm quoting, not a witted evidence to indicate that the defendant was a child molester, and there was not enough information there to determine that the defendant was a pedophile. Here, by contrast... In other words, Weber wasn't about going from child molester to pornography. It was going from a little pornography to a lot of pornography. It was going from a little bit of child pornography to the defendant being a pedophile. So you're basically saying that we have to be able to distinguish Weber to get you where you need to get? I don't think you need to be able to distinguish Weber, Your Honor, because I think that the three judges in Dougherty didn't think that Weber was on point. Well, actually, they did. If you look at page 898 of the Dougherty opinion, they specifically characterized Weber. They said, in Weber, we held that probable cause did not exist to search a house for child pornography when an affidavit recited only that a suspect had two years previously received a catalog of child pornography and had ordered four images of possible child pornography. So they cited Weber to that effect. What you just said was not accurate about Weber. It wasn't about going from pornography to child molestation. It was going from a little pornography to a lot of pornography. For purposes of the search, I understand that. But I think that what the court faulted in Weber, what the court faulted the affidavit for, was there was no evidence in that case that the defendant had contact offense or any history of contact offenses. Here, you can't say that. I mean, you have not only the probable cause that shows the defendant molested the child at the block at Orange, but the defendant was a registered sex offender with criminal charges in his criminal history of lewd and lascivious acts with a child under 14, child sex abuse, and possession of obscene matter. So far different from Weber, where I think the facts were very, very... But what about the fact that the affidavit never even says that there's probable cause to search for child pornography? I'm sorry, I missed the first part, Your Honor. That the affidavit never even claims that there's probable cause to search for child pornography. Here? Yes, here. The affidavit says at the bottom of page 5, based on my training experience, defendant's previous criminal history, my discussions with other law enforcement professionals, I believe Needham has an unnatural sexual interest in children. Right.  frequently possesses child pornography. In a compound sentence, and then it never says, and then when it says there's probable cause to search his house, it doesn't say for what, it doesn't say anything. It never says, I believe there's probable cause to think that there's, that there's probable cause to think he has child pornography. Well, I guess I would agree with Your Honor that that paragraph perhaps isn't perfectly drafted, but I think its implication is clear, that the defiant saying, I believe this defendant is likely to possess child pornography. And she never says how she learned, whatever she learned, where she gets this idea that there's this connection or anything else. It does list the common motive though, does it not? At the bottom of page, excerpt of record 5, they receive sexual gratification and satisfaction from physical contact with minors, communications with minors, and from fantasy involving the use of pictures, photographs, or electronic media, and writing on or about sexual activity with minors. It does, Your Honor. Why isn't that enough to establish under a common sense reading of the affidavit a link? I would submit that it is, Your Honor. Well, why couldn't somebody then file an affidavit and say, my experience is that people who are, you know, do drugs are likely to, to, who sell drugs are also likely to, you know, murder people. Well, I, let me, let me, let me spin a slightly different one. I think it is fairly common, and I think it's been accepted by this Court. I understand that, that there's these things about firearms and, but is it, is the notion that any police officer just come in and say, you know, I've learned that people who do X also do Y, and that's sufficient? To have probable cause? I think that, that the, where, where judges have the ability to, to review those and apply a common sense, whether that has some experiential value or not, and where it doesn't, you know, it's what we trust judges to do, is to reject assertions like that that just aren't based in common sense. Are you familiar with our recent case of Cotterman? How do you spell that, Your Honor? Because I don't think I have. C-O-T-T-E-R-M-A-N. It's a border case, but it also involves reasonable suspicion. And I raise that because the second part of the opinion indicated that Mr. Cotterman, who was picked up on a tech alert he'd had 15 years before, had had improper contact with a miner, was stopped at the border, which at that point there was no requirement for a reasonable suspicion. Later on, his computer was searched 170 miles from the border based upon the majority's conclusion that that tech alert alone, based on the previous conviction, was enough. Does that, again, you know, if you're in the case, it's a hard question for you. Does that have any bearing upon the point in the affidavit where she indicates, based on her training experience, Needham's previous sexual history, and my discussions, and so on? In other words, does the fact that he has a previous conviction record have any bearing on this case as far as good faith and whether or not there was potential probable cause? I would submit yes, and I'll tell you why. I think because the affiant is essentially concluding that I believe Mr. Needham has an unnatural sexual interest in children. And part of what she relies on to reach that conclusion is what she knows about his criminal history, which includes the fact he's a registered sex offender and has some of these charges that I identified earlier. And let me just remind the court, what was he previously convicted of? The affidavit is not clear whether they're convictions or charges, but I'll tell you. What was he charged with? They had to be convicted of something because he was a registered sex offender. That would be my belief as well, Your Honor. It is described in the middle of page 5 of the excerpts of record. It says, I obtained Orange Police Department's sex offender registrant photo of Needham and a criminal history check revealed he was arrested on May 13, 2000, for a violation of PC-288A lewd and lascivious acts with a child under the age of 14. His criminal history check confirmed Needham- He was 16 years old at the time. I'm sorry? He was 16 at the time, right? I don't know how the defendant's age is off the top of my head, Your Honor. Well, no, I thought that was an established fact. Anyway, your time is up, so thank you very much for your argument, and we'll give you two minutes. Thank you. A lot was talked about just now. If Your Honors have anything you'd like me to focus on right now. I'd very much like, Mr. Larson, for you to address the point I just addressed with your opposing counsel, and that has to do with Needham's previous criminal history. I admit that references to these people is not very strong, but what about his previous criminal history? Is that sufficient on which to base probable cause, and if not, why not? The Fourth Circuit and the Tenth Circuit have addressed this in the context of Terry Stops, and this Court has also held that a prior criminal alone is not enough for reasonable suspicion to stop someone on the street. It certainly doesn't rise to the level of probable cause either, and the logic is that one's past sins do not forever follow one around in life. Well, that's not really the issue. I mean, the issue is whether that combined with the probable cause as to the current molestation. Right. And the fact that there was some arrest for something having to do with obscene material or something. Exactly. The charge was obscene matter, and we don't know what the obscene matter was, and we don't know whether he was convicted on that charge or a different charge, and we don't know where the obscene matter was found or what Needham was doing. We need an en banc court to unravel this Gordian knot. It sounds like we're just all over the place on this. As far as good faith, we've got Springcourt and Messerschmitt, we've got Weber, we've got Doherty. We've got some real deficiencies in this affidavit. On the other hand, there are points such as there is a clear charge of child molestation. That's been pretty clearly found here. We've got prior criminal history. Is that not enough? That's an open question to some degree, is it not? The allegation of touching as to whether the person would have child pornography? Well, the question is you've got touching and you've got a previous criminal history. If the previous criminal history suggests pornography is involved, is that sufficient? I don't think it does. It does not. What are the previous charges? As my colleague, my esteemed friend, he listed them correctly. There was one charge of lewd and lascivious acts with a child, one charge of continuous sexual abuse, and one charge of possession of undefined obscene matter. That alone? That's what charges? Correct, Your Honor. That alone. We don't know which- You've got a charge. Exactly. He is a registered sex offender. But that charge alone, isn't that sufficient to tie this search warrant? No, Your Honor. It's a charge. We don't know what happened. There are other cases, the ones that other circuits have addressed on this question, where there were prior questionable acts of the individuals. Now, the question for probable cause and the question for good faith is, is it reasonable to think? So the question here is, is it reasonable to think that because Mr. Neal, when he was charged with possessing unspecified obscene matter, is it reasonable to think, based on that allegation, that he had child pornography in his house 10 years later on his iPod? Okay. You're out of time. Thank you both very much. The case of United States v. Needham is submitted.
judges: Berzon, Tallman, Smith